**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

| | |
|---|---|
| **MARY ANN FISHER
And ROSE V. FISHER,**<br><br>　　　　　　Plaintiffs,<br><br>**v.**<br><br>**ALLSTATE INSURANCE COMPANY,**<br><br>　　　　　　Defendant. | **CIVIL ACTION NO.: 3:24-CV-99
(GROH)** |

<u>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS
[ECF NOS. 42, 43]TO COMPEL PLAINTIFF'S FIRST INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS**</u>

### I.　　<u>INTRODUCTION</u>

On June 30, 2025, came the Plaintiffs, Mary Ann Fisher and Rose V. Fisher, by

counsel George N. Sidiropolis, Esq., and came Defendant, Allstate Insurance Company

by counsel, Brent K. Kesner, Esq., for an evidentiary hearing on Plaintiffs' Motions [ECF

Nos. 42, 43][1] to Compel Interrogatories and Production of Documents, respectively.

On October 26, 2024, Plaintiffs served [ECF No. 19] their First Interrogatories

and Requests for Production on Defendant Allstate and on December 13, 2024, Allstate

served its Objections and Responses to Plaintiffs' First Interrogatories and Requests for

Production to Plaintiffs. ECF No. 25. The District Court entered a Protective Order in

this matter on December 3, 2024 [ECF No. 24], and on December 27, 2024, Allstate

served its first supplement to its production. ECF No. 26. On March 4, 2025, Allstate

served its second supplement to its production. ECF No. 33. On April 30, Allstate

---

[1] This matter was referred to the undersigned by District Judge Gina M. Groh on May 5, 2025. ECF No. 44.

served the Plaintiffs with its amendments and supplemental answers to Plaintiffs' request. ECF No. 39.

The parties were unable to resolve Plaintiffs' outstanding issues with Allstate's responses and production, and on May 5, 2025, Plaintiffs filed their Motions [ECF Nos. 42, 43] to Compel Plaintiff's First Interrogatories and Requests for Production.[2] Defendant's Response [ECF No. 48] in Opposition to the Motions to Compel was filed on May 20, 2025. Plaintiffs filed a Reply [ECF No. 49] on May 27, 2025. Thereafter, Defendant filed its fourth supplemental discovery responses. ECF No. 55.

## II.    **LEGAL STANDARDS**

When a party fails to make requested disclosures or discovery, the requesting party may file a motion to compel. Fed. R. Civ. P. 37(a)(1). The party "resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Ceresini v. Gonzales, No. 3:21-CV-40, 2022 WL 628520 (N.D.W. Va. Mar. 3, 2022). "Thus, once the moving party has made 'a prima facie showing of discoverability,' the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought 'is of such marginal relevance that the potential harm ... would outweigh the ordinary presumption of broad discovery.'" PNGI Charles Town Gaming, LLC v. Hot Spot Ct Real Est., LLC, No. 3:18CV38, 2019 WL 8333525 (N.D.W. Va. Jan. 18, 2019) (quoting Eramo v. Rolling Stone LLC, 314 F.R.D. 205, 209 (W.D. Va. 2016)). Moreover, "[d]istrict courts generally

---

[2] On May 6, 2025, the Court set an Evidentiary Hearing on the Motions [ECF Nos. 42, 43] to Compel for Thursday, May 29, 2025. ECF No. 45. On May 9, 2025, the Defendant filed an unopposed Motion [ECF No. 46] to Continue the evidentiary hearing and provided the Court with three alternative dates. The Court reschedule the hearing for June 30, 2025, the earliest of the parties' provided dates. ECF No. 47.

have broad discretion in managing discovery, including whether to grant or deny a motion to compel." Bellon v. PPG Emp. Life, No. 5:18-CV-114, 2023 WL 4155420 (N.D.W. Va. Feb. 6, 2023).

"[T]he discovery rules are given a broad and liberal treatment." Shulin v. Werner Enterprises, Inc., No. 1:15CV87, 2016 WL 11500223 (N.D.W. Va. Feb. 25, 2016) (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co. Inc., 967 F.2d 980, 983 (4th Cir. 1992)). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Relevance is not, on its own, a high bar." Va. Dep't of Corrs. v. Jordan, 921 F.3d 180, 188 (4th Cir. 2019). Federal courts have long understood that "[r]elevancy for discovery purposes is defined more broadly than relevancy for evidentiary purposes." Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 193, 199 (N.D. W. Va. 2000). As such, information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Information sought is relevant if it "bears on, [or] reasonably could lead to any other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). But discovery, "like all matters of procedure, has ultimate and necessary boundaries." Susko v. City of Weirton, No. 5:09-CV-1, 2011 WL 98557 (N.D.W. Va. Jan. 12, 2011). Courts must limit the frequency or extent of proposed discovery if it is "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a "high bar," its proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information. Jordan,

921 F.3d at 188–89. These factors include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### III.    DISCUSSION AND RULING

Plaintiffs filed their two Motions on May 5, 2025, seeking to compel Defendant to provide full and complete responses to Interrogatories 3, 4, 8, 9, 11, 13, and 14 and Requests for Production 1, 2, 4, 6, 8, 9, 13, and 15 without objections. ECF Nos. 42, 43. At the hearing, the Court proceeded to hear arguments on each discovery dispute and makes the following rulings on each.

### A. Plaintiff's Motion [ECF No. 42] to Compel Interrogatories

#### 1. Interrogatory 3

**INTERROGATORY NO. 1:** Describe all payments made by Defendant and/or its agents stemming from the loss which is the subject matter of the plaintiffs' Complaint including amounts paid, reason for payment, and identify the individual receiving the same. Please include payments made to underlying defense counsel, consulting experts, rule 35 examining physicians and/or any other person or entity including private investigators, consultants, etc.

**ANSWER: Objection.** This request seeks irrelevant information regarding amounts paid by Allstate to its retained defense counsel, and this information is not reasonably calculated to lead to the discovery of relevant or admissible evidence. The attorney fees paid by Allstate were incurred after the filing of Plaintiffs' Complaint in connection with Plaintiffs' pursuit of liability coverage from Allstate Property and Casualty Company and underinsured motorists coverage from Allstate Insurance Company. The expenses have no bearing on any claim or defense at issue in this action. Any sums paid by Allstate for expenses for consulting experts, Rule 35 examining physicians, and to Plaintiffs are reflected in Exhibits A and B, Allstate's Claim File and Claim Diary.

> **SUPPLEMENTAL ANSWER:** To the extent this request seeks information concerning the amounts paid to defense counsel in the underlying action or this action, Allstate maintains its objection, as the information is confidential and, further, the billing information of Allstate's defense counsel is irrelevant to the claims and defenses at issue and is not reasonably calculated to lead to the discovery of relevant or admissible evidence. As to other payments made, see bates Financial00001-000021, and the invoices for the records review and IME in the underlying action, attached as Exhibit 1.

Id. at 4.

The Plaintiffs argue that they are entitled to the amount paid to defense counsel in the underlying underinsured motorist claim litigation. Id. at 4–5. To support this assertion, Plaintiffs cite to State ex rel. Montpelier U.S. Ins. Co. v. Bloom, 233 W. Va. 258, 272 (2014), which held that the plaintiffs in that matter were entitled to the payments made to defense counsel because they were alleging a civil conspiracy between defense counsel and the insurer.

Defendant argues that Montpelier, 233 W. Va., at 272, is not applicable here because there are no allegations of a civil conspiracy between defense counsel and Allstate. ECF No. 48 at 13–14. Further, Defendant argues that the amounts paid to defense counsel are not relevant and do not make any matter of consequence more or less likely. Id. at 5.

Plaintiffs' complaint is devoid of allegations of civil conspiracy. See generally ECF No. 1-1. At the hearing, Plaintiffs' counsel argued that they were entitled to these payments because the Defendant ratified defense counsel's allegedly wrongful litigation conduct. The undersigned finds Plaintiffs' counsel's arguments unavailing. The amount paid to defense counsel does not make any fact of consequence more or less probable. Although the standard for relevance in discovery matters falls short of the standard of

5

relevance for the admissibility of evidence, Plaintiffs have not met the bar to discover the amounts paid to defense counsel. See Kidwiler, 192 F.R.D., at 199. The actions of counsel are what they are – the amount paid to counsel by Allstate does not change what counsel did or did not do. Further, Plaintiffs cite to West Virginia precedent, not any precedent that is binding on this Court. Even if it were, the facts here are easily distinguished from those present in the Montpelier, 233 W.Va., at 272, namely the absence of an allegation of a civil conspiracy between defense counsel and Allstate. See generally ECF No. 1-1. Accordingly, Plaintiffs' Motion to Compel is **DENIED** as to Interrogatory No. 1.

### 2. Interrogatory 4

**INTERROGATORY NO. 4:** Please describe each and every step that was taken by Defendant(s) or its agents in the investigation of the claim for damages regarding the loss described in the civil Complaint that was filed in the Circuit Court of Berkley County, West Virginia, styled *Mary Ann Fisher and Rose Fisher v. Michael Skags,* 20-C-269 (hereinafter sometimes referred to as the "underlying Complaint"). For each step in the investigation, please list the dates and person(s) involved and what information was obtained.

**AMENDED ANSWER:** Objection. This Interrogatory is overly broad and unduly burdensome. It is not reasonably possible to describe every step "that was taken" over the course of the Plaintiffs' claims. In addition, the phrase "every step" is so broad as to encompass the identification of every single action taken in the handling of Plaintiffs' claims, including clerical functions such as opening mail, making copies, placing postage on letters, etc. A complete recitation of all such "steps" is impossible in the context of a written discovery response. Likewise, it is overly burdensome to describe in detail in a written discovery response all documents which could possibly evidence that all such activities were performed. Providing such a detailed written description of every document in Allstate's claim file is not proportional to the needs of this case when the documents, other than those identified as privileged, are being produced to Plaintiffs. The activities of Allstate's claims personnel are documented in the redacted Claim File (Exhibit A) and Claim Diary (Exhibit B) being produced in conjunction with these discovery responses and the individuals identified therein are believed to have knowledge of the information contained in said documents. The Claim File and Claim Diary contain notations of the activities of each individual involved in the handling of

> Plaintiffs' claims. These notations are the most complete and thorough record of each individual's activities, findings and conclusions. The writings produced by these individuals are included within the Claim File and Claim Diary. To the extent a claim of any privilege is being asserted, the same is identified on the Objection and Privilege Log produced contemporaneously with these discovery responses.

ECF No. 42 at 5–6.

The Plaintiffs argued in their briefing and at the hearing that Allstate's answers are insufficient. They contend that a similar case rejected an insurer's attempt to answer a similar interrogatory in this manner. Id. at 6 (citing Allman v. CMFG Life Ins. Co., No. 5:20CV220, 2021 WL 9666795, at *3 (N.D.W. Va. July 8, 2021)).

The Plaintiffs further argue that the requested information is reasonable under the circumstances. ECF No. 42 at 7. To support this assertion, they cite to authority that they claim warrants the supplementation of the claim file with additional information. See McCollum v. GEICO, No. 5:20CV46, 2020 WL 6947904, at *3 (N.D.W. Va. Aug. 24, 2020). The Court's decision, they argue, was based in part on the fact that the Defendant "would have more familiarity than Plaintiff as to how [the claim file] is organized." Id.

The Plaintiffs also contend that this Court should reject the Defendant's attorney client and work product privilege objections, and, even if the material is protected by the work product doctrine, the Plaintiffs have demonstrated substantial need and undue hardship. ECF No. 42 at 7–8.

The Defendant's response provides that the claims diary and file that it provided to the Plaintiffs is the most complete response to Interrogatory No. 4, short of regurgitating every document and entry in the claim file. ECF No. 48 at 14.

The Court finds that after reviewing Plaintiff's case law, the instant case is factually distinguishable. In Allman, the Court found that "there is nothing unduly burdensome about identifying actions taken during the course of the handling of a claim by three (3) individuals whose actions appear to fit into seven (7) pages of documents." 2021 WL 9666795, at *4. Here, that is not the case. The Plaintiffs' interrogatory asks the Defendant to identify "each and every step that was taken by Defendant(s) or its agents," and the claims file and diary encompass 3,086 pages. ECF No. 42 at 5. The burden of that request is significantly heavier in the present matter than it was in Allman. 2021 WL 9666795, at *3.

In sum, after reviewing the claim file itself in camera, the Court has determined that the claim file is sufficiently navigable and understandable as presented, and that the burden of answering the Interrogatories would be equal to all parties. Accordingly, the motion to compel Defendant to further answer Interrogatory No. 4 is **DENIED**.

### 3. Interrogatory 8

**INTERROGATORY NO. 8:** Identify any policies, procedures, guidelines, directives, memos or any other documents setting forth the standards, rules, guidelines or protocols Defendant(s)'s adjusters to follow in making claim valuations and/or settlement offers in relation to claims for underinsured motorist coverage in West Virginia.

**AMENDED ANSWER:** Objection. This Interrogatory is vague, overly broad, and unduly burdensome, inasmuch as the Interrogatory is not limited temporally or in geographic scope so as to lead to the discovery of relevant and/or admissible evidence. In particular, the Interrogatory is ambiguous as to whether it seeks information related to present policies/procedures, policies/procedures at the time period of Plaintiffs' claims, or policies/procedures at times in the past. In that regard, evidence of such records and materials from periods before the Plaintiffs' claim do not reflect the business policies or practices of Allstate and have no relationship to Plaintiffs' underinsured motorists claims of November 12, 2018. In addition, to the extent this request seeks information regarding the use of such materials on a national basis, the information is not relevant to the evidentiary

foundation of a "general business practice" since the request seeks information beyond the jurisdictional boundaries for which the West Virginia Unfair Claims Settlement Practices Act (W.Va. Code Section 33-11-4) and the Insurance Commissioner regulations promulgated thereunder apply. Moreover, such information is not relevant to the punitive damages inquiry and, in fact, is contrary to the holding of *BMW of North America v. Gore*, 517 U.S. 559 (1996). Materials used in states other than West Virginia are not relevant to the matters in dispute and such a request is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Accordingly, the Plaintiffs' request for records and materials not applicable at the time of Plaintiffs' accident and/or materials used outside of West Virginia exceeds the proportional needs of the case. Likewise, the phrase "adjusters to follow in making claim valuations" is overly vague because each claim is different and involves different factual scenarios which dictate which policies or procedures might properly apply. Allstate further objects because it operates in a highly regulated and competitive market and the information sought by the Plaintiffs is proprietary and constitutes confidential commercial information which could be harmful to the ability of this Defendant to compete in its industry if disclosed. Such records and materials may only be produced subject to the previously entered protective order. The process followed by Allstate for utilizing Colossus is set out in the Multi-State Market Conduct Regulatory Agreement. While West Virginia is not a Signatory Regulator of that agreement, the agreement nevertheless sets forth the process followed by Allstate for tuning. See the Tables of Contents for Allstate's Casualty Claim Handling Manual in effect at the time of the subject claim, previously produced as Exhibit D, and the Training Learning History Report., previously produced as Exhibit E. The materials were produced pursuant to the Court's Protective Order, Doc. 24. Plaintiffs may request production of those sections deemed relevant and those materials will be produced pursuant to the Protective Order. See the previously attached Multi-State Market Conduct Regulatory Agreement, Exhibit F, which was produced subject to the Court's Protective Order, Doc 24.

ECF No. 42 at 8–9.

Plaintiffs seek to compel the Defendant to produce the claim manual and to withdraw its objections to this interrogatory. Id. at 8–11. At the hearing, the parties indicated that they resolved their dispute as to the claim manual. As such, this Court will address the Plaintiff's Motion as to the Defendant's objections.

At the heart of Plaintiffs' issue with Defendant's objections is counsel's fear that Allstate is withholding documents on the basis of its objections. Plaintiffs also briefly

argued the issue of an attorney's Federal Rule of Civil Procedure 26(g) signing responsibility regarding the completeness of discovery. Id. at 10. At the hearing, Defendant represented to this Court that it is not withholding any documents that are geographically, temporally, or topically responsive to this interrogatory on the basis of their objections. Based upon defense counsel's representations to this Court regarding the actions he has taken to procure discovery from his client over the course of this litigation, the undersigned finds no good cause to call defense counsel's fulfillment of his Rule 26(g) duties into question.

Accordingly, Plaintiff's Motion to Compel as to Interrogatory No. 8 is **DENIED**. If Plaintiffs later find that the Defendant has not identified or produced documents in violation of the rules of discovery, they may take appropriate action at that time. However, responsive documents have been produced, and this Court will not order the Defendant to identify documents that it has verified do not exist.

### 4. Interrogatory 9

**INTERROGATORY NO. 9:** Please describe the process for utilizing Colossus in reference to West Virginia uninsured and/or underinsured motorist claims. Please provide all claim valuations, settlement recommendations, and/or estimates generated by Colossus in reference to the claim(s) that were the subject matter of the lawsuit filed in the Circuit Court of Berkley County, West Virginia, styled *Mary Ann Fisher and Rose Fisher v. Michael Skags,* 20-C-269. Please identify all documents and other information including, manuals, policies, procedures, e-mails, memorandum, directives, treatises, literature, other publications, and all printed or electronic information/communications, both internal and external, that Defendant relied upon in any manner for its use of Colossus in relation to the Plaintiff(s)'s claim(s).

**AMENDED SUPPLEMENTAL ANSWER: Objection. This Interrogatory is vague, overly broad, and unduly burdensome, inasmuch as the Interrogatory is not limited in time period so as to lead to the discovery of relevant and/or admissible evidence. In particular, the Interrogatory is ambiguous as to whether it seeks information related to present**

**policies/procedures, policies/procedures at the time period of Plaintiffs' claims, or policies/procedures at times in the past. In that regard, evidence of such records and materials from periods before the Plaintiffs' claim do not reflect the business policies or practices of Allstate and have no relationship to Plaintiffs' underinsured motorists claims of November 12, 2018. Accordingly, the Plaintiffs' request for records and materials not applicable at the time of Plaintiffs' accident exceeds the proportional needs of the case. Allstate further objects because it operates in a highly regulated and competitive market and the information sought by the Plaintiffs is proprietary and constitutes confidential commercial information which could be harmful to the ability of this Defendant to compete in its industry if disclosed. Such records and materials may only be produced subject to the previously entered Protective Order. The process followed by Allstate for utilizing Colossus is set out in the Multi-State Market Conduct Regulatory Agreement. While West Virginia is not a Signatory Regulator of that Agreement, the Agreement nevertheless sets forth the process followed by Allstate for tuning. See the attached Multi-State Market Conduct Regulatory Agreement, previously produced as Exhibit F, subject to the Court's Protective Order, Doc 24. Allstate has also previously produced, as Exhibit D, the Table of Contents of its Casualty Claim Manual in effect in November of 2018, the time of Plaintiffs' underinsured motorists claims, pursuant to the Protective Order entered by the Court (Doc. 24). Plaintiffs may request production of those sections deemed relevant and those materials will be produced pursuant to the Protective Order.**

Id. at 11–12.

Based upon Defendant's prior answers to this request, which were later amended, the Plaintiffs believe that the Defendant is in possession of "job aids" that it has not identified and/or produced. Id. at 12–13. The Defendant indicated that they amended their previous response because they were not in possession of the previously promised "job aids." ECF No. 48 at 15. As set forth on the record, Plaintiffs' Motion to Compel is **GRANTED in part** as to this portion of Interrogatory No. 9. Accordingly, the Defendant is **ORDERED** to supplement its answer to the extent there are or aren't any job aids.

Plaintiffs also seek to compel Defendant to provide a narrative written response to this interrogatory and take issue with Defendant's referral to materials in lieu of explaining the process as a response. ECF No. 42 at 12–13. At the hearing, Defendant indicated that a written response would essentially be a recitation of the materials they provided and that those materials constitute the most complete response to the Plaintiffs' request. This Court finds the Plaintiffs' arguments unavailing and will not order the Defendant to rewrite their policies and manuals into a narrative, written interrogatory response. Accordingly, Plaintiffs' Motion to Compel is **DENIED in part** as to this portion of Interrogatory No. 9.

### 5.  Interrogatory 11

**INTERROGATORY NO. 11:** Please list the training provided by defendant to the claim adjusters, evaluation consultant, claims employees (including supervisors and managers), who worked the claim(s) that were the subject matter of the lawsuit filed in the Circuit Court of Berkley County, West Virginia, styled *Mary Ann Fisher and Rose Fisher v. Michael Skags,* 20-C-269.
You may limit your answer to the following categories of training materials:
(a) Materials related to Allstate's Claims Core Process Redesign;
1. Materials related to the use of Colossus;
2. Materials related to the use of DecisionPoint;
3. Materials related to traumatic brain injuries;
(e) Materials related to chiari malformation and/or cerebellar tonsillar ectopia;
(f) Materials related to first party bodily injury claims (i.e., UM/UIM claims); and/or
(g) Materials related to the use of defense medical examiners and/or Rule 35 independent medical examinations;
Please identify any other training relevant to the claim that is the subject matter of the lawsuit filed in the Circuit Comi of Berkley County, West Virginia, styled *Mary Ann Fisher and Rose Fisher v. Michael Skags,* 20-C-269.

**AMENDED ANSWER:** Objection This Interrogatory is vague, overly broad, and unduly burdensome, inasmuch as the reference to materials begins with "(a)", and then identifies 1., 2., and 3. No. 3 is then followed with (e ), (f), and (g). It is unclear, therefore, whether the request is incomplete. In addition, the Interrogatory is not limited temporally or in geographic scope so as to lead to the discovery of relevant and/or admissible evidence. In particular, the Interrogatory is ambiguous as to whether it seeks information related to training materials used

prior to or at the time of Plaintiffs' claims, or materials used at any time. In addition, to the extent this request seeks information regarding the use of training materials on a national basis, the information is not relevant to the evidentiary foundation of a "general business practice" since the request seeks information beyond the jurisdictional boundaries for which the West Virginia Unfair Claims Settlement Practices Act (W.Va. Code Section 33-11-4) and the Insurance Commissioner regulations promulgated thereunder apply. Moreover, such information is not relevant to the punitive damages inquiry and, in fact, is contrary to the holding of *BMW of North America v. Gore*, 517 U.S. 559 (1996). Training materials used in connection with states other than West Virginia are not relevant to the matters in dispute and such a request is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Accordingly, the Plaintiffs' request for records and materials not applicable at the time of Plaintiffs' accident and/or materials used outside of West Virginia exceeds the proportional needs of the case. Likewise, the Interrogatory is overly vague and ambiguous in that it is not clear whether references to "claims" are intended to refer to Plaintiffs' claims against Michael Skags in the underlying lawsuit, Plaintiffs' claims submitted to Allstate for coverage, or Plaintiffs' claims against Allstate in this lawsuit. The Interrogatory is also overly broad and burdensome, and exceeds the proportional needs of this case in that it appears to seek materials related to traumatic brain injuries (which are not at issue in the present case) and cerebellar tonsillar ectopia – (which is not at issue in this case). The Interrogatory also appears to seek all training materials related to first-party bodily injury claims, which request is so overly broad as to be virtually impossible to address by way of an answer to an interrogatory. In addition, the request is overly broad in that it appears to seek materials related to the use of defense medical examiners and/or Rule 35 independent medical examinations. By seeking materials related to such use, the request is so overly broad as to be impossible to address by way of a response to an interrogatory. To the extent that there are materials related to any medical examination/Rule 35 evaluation of one or both of the Plaintiffs in this case, the materials and information are included within the Allstate Claim File materials being produced. Finally, Allstate objects because it operates in a highly regulated and competitive market and the information sought by the Plaintiffs is proprietary and constitutes confidential commercial information which could be harmful to the ability of this Defendant to compete in its industry if disclosed. Such records and materials may only be produced subject to the previously entered Protective Order. Allstate has produced the Table of Contents of its Casualty Claim Manual in effect in November of 2018, the time of Plaintiffs' underinsured motorists claim, pursuant to the Protective Order entered by the Court (Doc. 24). See Exhibit D. Plaintiffs may request production of those sections deemed relevant and those materials will be produced pursuant to the Protective Order. In addition, Allstate has produced the Training Learning History Report, Exhibit E. The materials were produced pursuant to the Court's Protective Order, Doc. 24.

Id. at 13–15.

The Plaintiffs ask this Court to compel a more comprehensive response to this interrogatory. Id. at 13–16. Specifically, the Plaintiffs argue that the Defendant is shifting the burden to the Plaintiffs to identify what sections of Allstate's claim manual are responsive to the interrogatory. Id. The Defendant indicates that it has produced the "Training Learning History Reports" for the individuals involved in handling the Plaintiffs' claim. Id. at 15; ECF No. 48 at 16. At the hearing, the Plaintiff asserted that the titles of the trainings are not indicative of the content that they contain. Accordingly, the Plaintiffs' Motion to Compel is **GRANTED in part**, and the Defendant is **ORDERED** to identify which trainings, if any, are responsive to each of the enumerated topics contained in the Plaintiffs' interrogatory and indicate what topic they address.

### 6. Interrogatories 13 and 14

**INTERROGATORY NO. 13:** Please state if depositions have been taken of defendant(s)'s employee(s), agent(s), evaluation consultant(s), representative(s), adjuster(s), manager(s) or other personnel who participated in the plaintiff's claim for insurance benefits which is the subject matter of the instant suit. If so, for each lawsuit please provide the following information: a. the name of the plaintiff(s) bringing the suit, the plaintiff(s)'s lawyer(s) and law firm; b. the style of the case and case number; and c. the jurisdiction in which the suit was filed.

**SUPPLEMENTAL ANSWER:** Objection. This Interrogatory seeks information which is irrelevant to the claims and defenses at issue in this action and is not reasonably calculated to lead to the discovery of relevant or admissible information. The request is also overly broad and burdensome, in that it is not limited to depositions taken of Allstate's representatives in connection with any claim or suit addressing claims similar to those at issue. For example, Allstate's representatives may very well have given depositions in connection with matters entirely unrelated to their work in the insurance industry. Such depositions would have no possible relevance to the claims and defenses at issue in the present action. Moreover, depositions of Allstate's representatives regarding issues, matters, claims or cases beyond those addressed by the present lawsuit are irrelevant and the request for such information is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Likewise, Allstate does not maintain a list of the depositions that may have been given by its

14

representatives or the issues or topics that may have been addressed in such depositions. Accordingly, identifying the information necessary to respond to Plaintiffs' request would require Allstate to identify every deposition given over the lifetime of every representative who had any role in connection with the Plaintiffs' claims, and Allstate would then have to review every such deposition to determine what issues or topics were addressed and whether those issues or topics have any relationship to the claims and defenses at issue in the present action. Such tasks exceed the proportional needs of the case.

Allstate has made inquiry of its employees who had involvement in the handling of the bodily injury underinsured motorists claims of Plaintiffs as to whether they had ever acted as a Rule 30(b) representative of Allstate. None had.

ECF No. 42 at 16–17.

**INTERROGATORY NO. 14:** Please state whether a Rule 30(b)(6) deposition of the defendant was taken regarding any matter relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of the electronic transcript and/or video of said deposition. If so, please identify the lawsuit with particularity, the names of the parties, where suit was filed, the identity of counsel for the parties, the name of the person deposed, and the state in which they were deposed. You may limit your answer to cases alleging violations of West Virginia insurance law.

**SUPPLEMENTAL ANSWER:** Objection. This request seeks information which is irrelevant to the claims and defenses at issue in this action. The request is not reasonably calculated to lead to the discovery of relevant or admissible evidence. The request is also vague and ambiguous, in that it does not specify the claims or defenses which are the subject of the inquiry. Accordingly, it would be necessary for Allstate's counsel to analyze the present case to identify the claims and defenses at issue, and then review depositions of any representative of Allstate who has been deposed at any time in the history of Allstate's existence (as the request is not limited temporally) concerning a matter involving allegations of violations of West Virginia Insurance law. Such an analysis would necessarily involve the mental impressions of Allstate's counsel, and exceeds the legitimate scope of discovery and the proportional needs of the case. In addition, because Allstate does not maintain a list of depositions of its representatives indexed by the topics covered, it has no way to determine what topics or issues were addressed in any such depositions and would, therefore, be required to complete a manual review of all of the depositions identified (the number of which is presently unknown and, likely, and almost certainly not be determined) in order to establish whether the depositions addressed any claim or defense at issue in the present case. The request, therefore, exceeds the proportional needs of the case. However, Allstate has made inquiry of its employees who had involvement in the handling of the bodily injury underinsured motorists claims of

Plaintiffs as to whether they had ever acted as a Rule 30(b) representative of Allstate. None had.

Id. at 17–18.

Plaintiffs ask this Court to compel the Defendant to fully answer its interrogatories. Id. at 16–19. Plaintiffs support this request by citing to other jurisdictions that have permitted this kind of discovery, arguing that it is relevant to proving the Defendant's general business practices. Id. at 18 (citing Lillibridge v. Nautilus Ins. Co., No. CIV. 10-4105-KES, 2013 WL 1896825, at *8 (D.S.D. May 3, 2023)). Plaintiffs further argue that the Defendant has made an improper proportionality objection, failing to produce some evidence supporting its claim of undue burden. ECF No. 42 at 18.

In response, the Defendant asserts that this request is unduly burdensome and because it seeks information about individuals beyond the individuals who actually handled Plaintiffs' claim, seeks irrelevant evidence. At the hearing, Defendant's counsel indicated that he had made inquiry into whether those individuals involved in handling Plaintiffs' claim who were still employed by Allstate had been deposed in their professional capacity at Allstate. He represented to the Court that none had – either as a 30(b) representative or otherwise. Defense counsel also informed the Court that Defendant does not keep records of employees' depositions, and in order to answer Plaintiffs' request in its entirety, the Defendant would have to look through each individual case and/or ask each individual tangentially related to this claim.

Accordingly, Plaintiffs' Motion to Compel as to Interrogatory No. 13 is **GRANTED in part** as to the amendment of Defendant's answer discussed on the record. To the extent that the representation that no employees had been deposed is true and correct,

16

Defendant is **ORDERED** to amend its answer to Interrogatory No. 13 to reflect this representation.

As to all other issues regarding Interrogatories No. 13 and 14, Plaintiffs' Motion to Compel is **DENIED in part** as it is unduly burdensome, overbroad, and not likely to lead to the discovery of admissible evidence.

## B. Plaintiff's Motion [ECF No. 43] to Compel Production of Documents

### 1. Requests 1, 2, and 4

**REQUEST NO. 1:** Provide a complete copy of the claims file(s) related in any manner to the Complaint that was filed in the lawsuit filed in the Circuit Court of Berkley County, West Virginia, styled *Mary Ann Fisher and Rose Fisher v. Michael Skags,* 20-C-269.

**AMENDED RESPONSE: Objection.** This request seeks information protected from discovery by the attorney client privilege and/or the Work Product Doctrine or other privilege. Allstate produces, as Exhibit A, its Claim File, and Exhibit B, its Claim Diary, which contain Allstate's claim notes and materials and are the most thorough record of the activities comprising Allstate's investigation and handling of Plaintiffs' claim. Exhibit A and Exhibit B have been redacted to remove information protected from discovery by the attorney-client privilege and/or the Work Product Doctrine. See Allstate's Objection and Privilege Log, previously attached as Exhibit A, its Claim File, and Exhibit B, its Claim Diary, which have been redacted to remove information protected from discovery by the attorney-client privilege and/or the Work Product Doctrine.

Id. at 4.

**REQUEST NO. 2:** Please produce the following claim related materials: 1. Paper and electronic claim files - Home Office, Regional, Local, and "field" files including, but not limited to: a. "Master File"; b. "Dummy File"; c. "Supplementary File"; d. "Cross File"; 2. Reports and correspondence, including e-mails including, but, not limited to: a. progress reports; b. evaluation forms; c. request for authority; 3. Handwritten/electronic memos of any type *(i.e. telephone slips, notes, etc);* 4. Activity logs (electronic or paper); 5. Tapes - videos, audio, surveillance reports; 6. Instructions on investigations, evaluation, etc.; 7. Statistical documents, draft copies, repo1is [sic] *(i.e. reserve history, payment requests, etc);* 8. Copy of the claim file jackets for all claim files associated with the handling of claim(s) made by Mary Ann Fisher and Rose Fisher. 9. Other files maintained by Allstate for the claim(s) including, but, not limited to: a. "Field

17

work" testing, analysis; b. Audit; c. Quality Assurance; d. Surveys. 10. Information from outside investigators and experts regarding the incident and/or claim(s) including, but, not limited to: a. Referral letters; b. Assignments; c. forms/letters/emails; d. Confidential reports; e. Preliminary report/status reports; f. Progress Reports; g. Surveillance tapes *(audio or video);* h. Paper review; i. Management review; j. Retroactive review; k. Retrospective review; l. Billing audits and/or other audits; m. Evaluations made by consultants, third-pa1iies [sic] working on behalf of Allstate and/or any other investigator, adjuster, contractor or other entity paid any money or consideration to review information related to the risk/claim which is the subject matter of the instant litigation excluding defense counsel, but including in house counsel who controls, manages, supervises or otherwise exe1is [sic] influence over the handling of the plaintiffs' claim and/or risk that was underwritten. n. Tax ID numbers for all vendors used by Allstate in the handling of plaintiff(s) claim(s). 11. Written email or electronic claim file correspondence with Allstate's Home Office and/or other departments concerning the handling of plaintiff(s)' s claims. 12. All materials generated by SIU in reference to the instant claim, including any materials provided to the National Insurance Crime Bureau and/or Insurance Service Office. A. For each and every portion of the file contained on computer please print a paper copy of each portion. B. If any information has been deleted from either the paper file or the computer file, please identify what documents/information was deleted, the contents of the same, and the reason for deletion.

**AMENDED RESPONSE:** Objection. This request seeks information protected from discovery by the attorney client privilege and the Work Product Doctrine or other privilege. Allstate Previously produced, as Exhibit A, its Claim File, and Exhibit B, its Claim Diary, which contain Allstate's claim notes and materials and are the most thorough record of the activities comprising Allstate's investigation and handling of Plaintiffs' claim. Exhibit A and Exhibit B have been redacted to remove information protected from discovery by the attorney-client privilege and/or the Work Product Doctrine. See Allstate's Objection and Privilege Log, attached.

Id. at 4–5.

**REQUEST NO. 4:** With respect to the instant case produce copies of all emails (internal and external), correspondence, documents, memoranda, minutes of meetings, memos or other information produced or received by Defendant that in any way related to the claim and/or the Complaint that was filed in the Circuit Comi of Berkley County, West Virginia, styled *Mary Ann Fisher and Rose Fisher v. Michael Skags,* 20-C-269.

**RESPONSE:** See **Exhibit A**, Allstate's Claim File, and **Exhibit B**, Allstate's Claim Diary, which contain all such information. **Exhibit A** and **Exhibit B** have been redacted to remove information protected from discovery by the attorney-

client privilege and/or the Work Product Doctrine. See Allstate's Objection and Privilege Log, attached.

Id. at 7–8.

At the hearing, the Plaintiff asserted that Allstate was, or could be, in possession of additional emails or communication that are responsive to Request for Production 4 that are not included in the claims file, claims diary, or privilege log. In response, Defendant stated that all documents responsive to Requests for Production 1, 2, and 4 are included in the claims file, claims diary, or privilege log. Additionally, Defendant's counsel informed that he had specifically asked those associated with the underlying claim whether all documentation was included in the claims file, claims diary, or privilege log, and they responded in the affirmative. Accordingly, the Court will address the remaining issues of privilege regarding Requests 1, 2, and 4 together.

The Plaintiffs argue that Defendant's responses are improper insofar as Defendant asserts a blanket privilege to all materials generated by an attorney. See id. at 5–6. Further, in their motion, Plaintiffs sought to have the Court conduct an in camera review of the documents marked as privileged in Defendant's privilege log. Id. at 5.

Defendants, in conjunction with the claim file and diary, provided a privilege log to Plaintiffs, redacting what they purport to be privileged communications between attorney and client, as well as documents that they claim are work product, otherwise confidential, or irrelevant. ECF No. 48 at 18. After the hearing, Defendants produced the documents marked as privileged in the claim file and diary for in camera review.

After a thorough review of the relevant documents contained in the redacted and unredacted claim file and diary, the undersigned finds that Defendant's asserted

privileges are appropriate. Therefore, the Court **DENIES** the Plaintiff's Motion as to Request No. 1, 2, and 4.

### 2. Request 6

**REQUEST NO. 6:** Please produce the employment and personnel files for every person working on behalf of Defendant(s) identified in your answers to the above interrogatories and/or identified in the defendant's Rule 26(a)(I) disclosures. Please redact all social security numbers and other personal, identification information. Plaintiff is seeking information on the person's education, training, discipline, employment goals, performance evaluations and any claim related bonus structure. Produce a complete copy of the personnel file for every adjuster, evaluation consultant, supervisor, manager and/or employee of defendant who participated in the adjusting, handling, investigation, supervision and/or management of Plaintiffs claim, including goals, incentive, corrective actions, reprimands, personnel review documents and merit driven incentives, bonuses and/or profit sharing.

**RESPONSE:** Objection. This request seeks information which is irrelevant and is not reasonably calculated to lead to the discovery of relevant or admissible evidence. The request also seeks information from employee files of a private, personal and confidential nature, to which the employees of Allstate have a right and expectation of privacy. In that regard, this Request violates the privacy rights of the subject employees because personnel matters are presumptively private and beyond the realm of public review. Moreover, the information is available from other sources without requiring this substantial invasion of privacy. In addition, disclosure violates West Virginia public policy and may also impede Allstate's ability to self criticize, which also violates public policy and W.Va. Code § 33-11-4 (9), so as to render the information beyond the scope of discovery. The personal information of individual employees of Allstate is not relevant nor reasonably calculated to lead to the discovery of relevant or admissible evidence.

ECF No. 43 at 8–9.

The Plaintiffs argue that these objections were "categorically rejected" by the Court in Allman, where United States Magistrate Judge James P. Mazzone found that "'the employee's personnel file was clearly relevant.'" ECF No. 43 at 9; Allman, 2021 WL 9666795, at *12. The Defendant argues that the Plaintiffs fail to acknowledge that

20

Judge Mazzone found that the employees' disciplinary records were not relevant. ECF No. 48 at 18.

Plaintiffs cite to another case from this district where Magistrate Judge James E. Seibert held that the insurer had to produce the training, work experience, work record, and qualification of those employees involved with handling the plaintiff's claim, but otherwise found the rest of a similar request to be non-discoverable. Weller v. American Home Assur. Co., No. 3:05-cv-90, 2007 WL 1097883, at *7 (N.D.W. Va. Apr. 10, 2007). Plaintiffs otherwise cite to caselaw that is not binding on this Court or does not address the specific factual circumstances and legal allegations surrounding this claim.

As set forth on the record at the hearing, the Court **GRANTS in part** Plaintiffs' Motion to Compel as to Request for Production 6. Accordingly, it is **ORDERED** that Defendant shall produce the training by Defendant, work experience, work record, and the qualifications of those employees identified by the Defendant in response to Plaintiffs' interrogatories and/or identified in its Rule 26(a)(1) disclosure.

### 3. Request 8

**REQUEST NO. 8:** Please produce all documents, materials, communications/information, including treatises, literature, and other publications identified in your answers to the above interrogatories.

**AMENDED RESPONSE:** Objection. Allstate operates in a highly regulated and competitive market and the information sought by the Plaintiffs is proprietary and constitutes confidential commercial information which could be harmful to the ability of this Defendant to compete in its industry if disclosed. Such records and materials may only be produced subject to an appropriate protective order. See Allstate's discovery responses and the previously produced and attached Exhibits. In addition, Allstate previously produced the Table of Contents of its claims guidelines in effect in November 2018, the time of Plaintiffs' underinsured motorists claim, subject to the Protective Order, Doc. 24.

ECF No. 43 at 10.

21

At the hearing, Plaintiff withdrew this request as moot as the information sought is contained in other interrogatories or request for production.

### 4.  Request 9

**REQUEST NO. 9:** Produce a complete copy, in electronic and written form, of all manuals, desk books, policies, procedures, codes of ethics, guidelines, company directives, and instructional and training materials related to investigations, claims evaluation, and adjusting, pertaining to underinsured motorist claims and/or first party bodily injury claims issued by Allstate Insurance Company. Please include materials that discuss first party claim handling generally based upon national standards for claims handling established by Allstate and claims handling specifically related to West Virginia claims. You may limit your response to materials that were effective and in use by the company from 2020 to the date of the underlying settlement. Training materials shall include, but are not limited to training relevant to the subject matter of the claim that is the subject matter of the Circuit Court of Berkley County, West Virginia, styled Mary Ann Fisher and Rose Fisher v. Michael Skags, 20-C-269.

**AMENDED SUPPLEMENTAL RESPONSE:** Objection This Request is not limited in geographic scope so as to lead to the discovery of relevant and/or admissible evidence. In particular, to the extent this request seeks information regarding the use of manuals, guidelines or training materials on a national basis, this information is not relevant to the evidentiary foundation of a "general business practice" since the request seeks information beyond the jurisdictional boundaries for which the West Virginia Unfair Claims Settlement Practices Act (W.Va. Code Section 33-11-4) and the Insurance Commissioner regulations promulgated thereunder apply. Moreover, such information is not relevant to the punitive damages inquiry and, in fact, is contrary to the holding of BMW of North America v. Gore, 517 U.S. 559 (1996). Training materials used in connection with states other than West Virginia are not relevant to the matters in dispute and such a request is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Accordingly, the Plaintiffs' request for records and materials used outside of West Virginia exceeds the proportional needs of the case. Allstate further objects because it operates in a highly regulated and competitive market and the information sought by the Plaintiffs is proprietary and constitutes confidential commercial information which could be harmful to the ability of this Defendant to compete in its industry if disclosed. Such records and materials may only be produced subject to the previously entered Protective Order. See the Tables of Contents for Allstate's Casualty Claim Handling Manual in effect at the time of the subject claim, previously produced as Exhibit D, and the Training Learning History Report., previously produced as Exhibit E. These materials were produced pursuant to the Court's Protective Order, Doc. 24.

Id. at 11.

This Request for Production essentially asks the Defendant to produce any documents identified in Interrogatory No. 11. Accordingly, Plaintiff's Motion to Compel is **GRANTED in part** as to Request for Production No. 9. To the extent that any of the trainings are associated with an enumerated topic in Interrogatory No. 11, the Defendant is **ORDERED** to supplement its response to include the production of that training. However, if the training materials are in a format such that they cannot be produced to the Plaintiffs, Defendant's counsel is **ORDERED** to coordinate an opportunity for Plaintiffs' counsel to review and take notes, screenshots, etc. necessary to obtain the information contained within those trainings.

### 5. Request 13

**REQUEST NO. 13:** Produce a copy of each and every Colossus report generated in reference to the plaintiff(s)'s claim(s) for underinsured motorist coverage.

**AMENDED RESPONSE: Objection**. This request seeks information protected from discovery by the attorney client privilege and the work product doctrine in that each Colossus report was generated after the filing of suit and incorporates the mental impressions of the employees completing the analysis and the mental impressions of counsel.

Id. at 13.

Plaintiffs argue that the Colossus reports are not subject to the work product doctrine and they should be produced. Id. at 13–14. In support of this argument, Plaintiffs cite to multiple cases, state and federal, for the proposition that documents prepared in the regular course of business, regardless of litigation, are not subject to the work product doctrine. Id. at 13–14; ECF No. 49 at 9–11. At the hearing, they further argued that, even if the documents are subject to the work product doctrine, there is a

substantial need for the documents as they are the only source of the information contained within them.

The Defendant argues that the documents are subject to the work product doctrine. ECF No. 48 at 19. Relying on Nicholas v. Bituminous Cas. Corp., 235 F.R.D. 325, 329 n. 2 (N.D.W. Va. 2006), the Defendant argues that federal courts sitting in diversity apply federal law to work product issues. ECF No. 48 at 5. Under federal law, Defendant argues, documents prepared by employees of the party being sued are shielded by the work product doctrine from production when they are prepared in anticipation of or for litigation. Id. at 5–8. The Defendant further asserts that the Colossus reports were prepared as part of its handling of the underlying litigation in this matter. Id. at 19.

This Court finds that the Colossus reports are protected by the work product doctrine. In order to be protected as work product, the document "must be prepared because of the prospect of litigation" when the preparer faces an actual or potential claim following an actual event that "reasonably could result in litigation." Nat'l Union, 967 F.2d, at 984. "Materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3)." Id. Therefore, the Court must determine "the driving force behind the preparation of each requested document" to resolve a work product dispute. Id.

In determining whether a document is created in the ordinary course of business or in anticipation of litigation for purposes of applying the work product doctrine, the Court applies a "case-by-case" approach and considers the following factors: the nature

24

of the documents, the nature of the litigation, the relationship between the parties, the involvement of counsel, and the time when the document was created. Kidwiler, 192 F.R.D., at 542. The Court "must carefully analyze the factual circumstances under which the requested documents were created, consider the purpose of the representatives in preparing the requested documents, and examine the documents themselves." Nicholas, 235 F.R.D., at 332.

Here, the Colossus reports at issue were generated *after* litigation was anticipated and/or initiated. While it may be that Colossus reports would have been generated regardless of this litigation, the Colossus reports that are subject to this discovery dispute were generated as part of the Defendant's litigation preparation. The Plaintiff has not presented any evidence to the Court suggesting that Allstate utilizes Colossus in each and every case to allow this Court to hold that utilizing Colossus is a "general business practice."

Further, this Court does not find that the Plaintiffs have a substantial need for the Colossus reports. Discovery comes in many forms, and interrogatories and requests for production are not the only tools in parties' discovery arsenal. There are other avenues the Plaintiffs may utilize to obtain information related to the Defendants claim valuation, the tools, materials, and methods utilized to make the valuation, and the facts and other information on which the valuation is based. Accordingly, Plaintiffs Motion to Compel as to Request No. 13 is **DENIED**.

### 6. Request 15

**REQUEST NO. 15:** Produce all Colossus Tuning manuals in effect at the time of the plaintiff(s)'s claim(s) for underinsured motorist coverage.

**AMENDED RESPONSE: Objection.** This Request is vague, overly broad, and unduly burdensome, inasmuch as the Request is not sufficiently limited in geographic scope so as to lead to the discovery of relevant and/or admissible evidence. In particular, information regarding the use of such materials on a national basis is not relevant in the evidentiary foundation of a "general business practice" since the request seeks information beyond the jurisdictional boundaries for which the West Virginia Unfair Claims Settlement Practices Act (W.Va. Code Section 33-11-4) and the Insurance Commissioner regulations promulgated thereunder apply. Such information is not relevant to the punitive damages inquiry and, in fact, is contrary to the holding of BMW of North America v. Gore, 517 U.S. 559 (1996). Materials used in states other than West Virginia are not relevant to the matters in dispute and such a request is not reasonably calculated to lead to the discovery of relevant or admissible evidence. Accordingly, the Plaintiffs' request for materials used outside of West Virginia exceeds the proportional needs of the case. Allstate further objects because it operates in a highly regulated and competitive market and the information sought by the Plaintiffs is proprietary and constitutes confidential commercial information which could be harmful to the ability of this Defendant to compete in its industry if disclosed. Such records and materials may only be produced subject to the previously entered Protective Order (Doc 24). The process followed by Allstate for utilizing Colossus is set out in the Multi-State Market Conduct Regulatory Agreement. See the previously produced Multi-State Market Conduct Regulatory Agreement, Exhibit F, which was produced subject to the Court's Protective Order (Doc 24). While West Virginia is not a Signatory Regulator of the Agreement, the Agreement nevertheless sets forth the process followed by Allstate for tuning. Allstate has also promptly produced the Table of Contents of its Casualty Claim Manual in effect in November of 2018, the time of Plaintiffs' underinsured motorists claim, pursuant to the Protective Order entered by the Court (Doc. 24). Plaintiffs may request production of those sections deemed relevant and those materials will be produced pursuant to the Protective Order.

ECF No. 43 at 15.

Plaintiffs first argue that the Defendant's objections are improper and lack the specificity required by the Federal Rules of Civil Procedure. Id. at 16. They then argue why it is improper for Allstate to withhold the claim manual. Id. at 16. Defendant countered that it provided the Plaintiffs with the Multi-State Market Conduct Regulatory Agreement and reiterated that the Plaintiffs could inform it of which portions of the claim manual they wanted. ECF No. 48 at 19.

26

However, this request is not about the claim manual. It is about the Colossus tuning manuals. At the hearing, Defense Counsel represented to the Court that he was unaware what Plaintiffs' counsel was referring to and that the Multi-State Market Conduct Regulatory Agreement governed how the Defendant tunes Colossus. In response, Plaintiffs counsel argued that he had provided Defense counsel with tuning manuals in discovery and that the above-referenced agreement only regulated *when* the Defendant could tune Colossus, not *how* it was tuning it.

The undersigned finds that the production of the tuning manuals is relevant and proportional to the needs of this case and cannot otherwise be obtained by the Plaintiffs. Accordingly, Plaintiffs' Motion to Compel is **GRANTED** as to Request No. 15, and the Defendant is **ORDERED** to produce any Colossus tuning manuals that were in effect at the time of the Plaintiffs' claims for underinsured motorist coverage to the extent that they exist.

## IV.    CONCLUSION

For the reasons set forth above and for the reasons set forth on the record, Plaintiff's Motions [ECF Nos. 42, 43] to Compel are **GRANTED in part and DENIED in part.** The Defendant is **ORDERED** to comply with the terms contained herein and supplement its responses with the relevant answers and documents **by Thursday, July 24, 2025.**

This Court is cognizant of the highly competitive nature of the Defendant's industry, and accordingly, any response, supplemental response, production, and supplemental production ordered pursuant to this order, shall be subject to the Protective Order entered herein on December 4, 2024. ECF No. 24.

Any party may, within fourteen (14) days of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. Fed. R. Civ. P. 72(a). A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a).

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Order to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**Dated:** July 10, 2025

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE

28